Robert L. Stockwell, Executive Director Kansas Performance Review Board 800 S.W. Jackson, Suite 817 Topeka, Kansas 66612
Dear Mr. Stockwell:
You request our opinion regarding the authority of the Kansas Performance Review Board (Board) to charge a state agency for the cost of a performance review conducted by the Board on behalf of that agency. You explain that while start up funds for the Board were from Economic Development Initiative Funds and that the State General Fund has made appropriations for the Board for the past three years, the Division of Budget is now recommending that the Board be shifted to a fee funded status to minimize its dependence on the State General Fund. Pursuant to this recommendation, the Board has sent letters requesting reimbursement to at least three state agencies, none of which has made payment.
We note that the Board is not asking whether it can enter into voluntary agreements with agencies to help fund the costs of analyses, nor is it asking about charging for services it is not statutorily required to perform. Thus, we do not address these circumstances in this opinion.
The Kansas Performance Review Board was created in 1996[1] "to provide a continuing process to review functions of state government to determine whether they are being executed in the most efficient manner possible."[2] The Board is responsible for "reviewing governmental functions and recommending whether such functions should be delegated to the private sector, eliminated, retained in their present form or modified."[3] The Board is authorized to initiate an analysis of a particular governmental function upon receipt of: 1) a written suggestion or complaint by a citizen of the State;[4] 2) a petition of private interest from a private firm indicating an interest and capability of providing a service currently provided by State government;[5] 3) a private sector complaint of public sector competition;[6] or 4) a written suggestion by a public employee or public employee organization regarding the opportunity to review a governmental function that has been delegated to the private sector.[7]
As an administrative agency of the State, the Kansas Performance Review Board is a creature of statute and its powers are dependent upon authorizing statutes.[8] This means that any exercise of authority claimed by the Board must be conferred by statute, as there is no general or common law power that can be exercised by an administrative agency.[9]
A review of the Board's statutes reveals no specific authority for assessing the costs of performance reviews against the State agency being reviewed. K.S.A. 75-7107 does establish the Kansas performance review board fund, and specifies that all moneys credited to this fund are to be used for the operations of the Board in the performance of its statutory powers and duties. However, we have found no statutory provisions that direct money be paid into this fund.
You direct our attention to provisos in appropriations bills for the years 1998, 1999 and 2000.[10] Each of these provisos follows an appropriation to the Kansas performance review board and states as follows:
 "Provided, That the executive director of the performance review board is hereby authorized to fix, charge and collect amounts from state agencies to recover all or part of the costs of analyses of governmental functions conducted at the discretion of the executive director or conducted at the request of such state agencies in accordance with K.S.A. 75-7104 and amendments thereto: Provided further, That all such amounts received for such analyses shall be deposited in the state treasury and credited to the Kansas performance review board fund: And provided further, That such amounts are hereby authorized to be paid by such state agencies from one or more appropriate special revenue funds of the state agencies that are the subject of the analyses: And provided further, That all such expenditures from such special revenue funds shall be in addition to any expenditure limitations imposed on such funds."[11]
The question then becomes whether a proviso in an appropriations bill is sufficient "statutory authority" to allow the Board to assess the costs for performance reviews.
The Kansas Supreme Court discussed the nature of appropriations inState ex rel. Stephan v. Carlin,[12] wherein the Court was faced with deciding whether the Governor could line item veto a substantive provision that was placed by the Legislature in an appropriations bill. We now quote at length from that case:
 "Section 14(b) of Article 2 provides the only authority for the governor to veto less than an entire legislative act. This subsection authorizes the governor to veto one or more `items of appropriation of money,' when a single bill contains several such items. This provision contemplates a `line item veto' — the veto of one or more parts of an appropriation measure while approving the remainder. For example, under this subsection the governor may, if he chooses, veto the appropriation of a sum of money for a specified purpose while leaving the other provisions of an appropriation bill intact.
 "Article 2, Section 24 of our Constitution states: `No money shall be drawn from the treasury except in pursuance of a specific appropriation made by law.' (Emphasis added.) In State, ex rel. v. Fadely, 180 Kan. 652, 661, 308 P.2d 537 (1957), we were called upon to define that phrase. We said:
 "`The term "specific appropriation made by law" may be defined as an authority of the legislature, given at the proper time and in legal form to the proper officials, to apply a distinctly specified sum from out of the state treasury, in a given period, for a specified objective or demand against the state. In general terms, a "specific appropriation made by law" is the act of setting money apart formally or officially for a special use or purpose by the legislature in clear and unequivocal terms in a duly enacted law.'
 "Similarly, `items of appropriation of money,' as that phrase is employed in Section 14(b), means the designation of specific sums of money which the legislature authorizes may be spent for specific purposes. Some common examples of `items of appropriation of money' are these. There is appropriated (for a named agency) from the state general fund: for salaries and wages, $500,000; for operating expenditures, $200,000; for the purchase of a site (at a stated location for a certain purpose) $15,000; and for a certain purpose from a certain fund, no limit (the authorized sum being the amount in the described fund).
 "Turning now to Section 77 of Senate Bill No. 470, it is clear that this section is not an item of appropriation of money. In that section, the legislature did not authorize the spending of a specific sum of money for a specific purpose; it sanctioned no disbursement of money from the public treasury for a certain purpose. The section was not subject to the line item veto authorized by Section 14(b) of Article 2 of our Constitution.
 "Since statehood, Section 16 of Article 2 of the Constitution of this State has read: `No bill shall contain more than one subject . . .' To that phrase was added in 1974: `(E)xcept appropriation bills and bills for revision or codification of statutes.' The question squarely presented here is this: Is the legislature granted authority by the 1974 amendment to include in an appropriations bill, without limitation, any subject which it wishes to address? May it include therein subjects entirely foreign to appropriations? We think not. The Citizens' Committee on Constitutional Revision, in its 1969 report, quoted by the Governor in his veto message, said at p. 26:
 "`Section 16. The proposed change in this section is designed to conform to present actual practice relative to bills for appropriations . . .' (Emphasis added.)
 "The actual practice is evidenced by a review of the appropriation bills enacted by the legislature at the time of and immediately prior to the revision. See, for example, 1969 Laws, Chapters 12 through 46, and 1968 Laws, Chapters 11, 12, 194, 195, 196, 197, 220, 232, 240, 267, 268, 362 and 412. Examination of those chapters discloses no attempt by the legislature to include within those appropriation bills amendments to general legislation, wholly unrelated to the setting apart of state funds and the authorization of the expenditure thereof for specific purposes. The primary content is language appropriating specific sums of money for specific purposes; authorizing the transfer of sums of money from one fund to another; increasing or decreasing expenditure limitations; directing certain state officials to draw warrants; and reappropriating unencumbered balances in certain funds.
. . . .
 "Section 77 of Senate Bill No. 470 does not appropriate state funds; it does not establish expenditure limitations on state funds; it does not authorize the transfer of state moneys from one fund to another. It does fix budget limitations for school districts. It bears no more relationship to the appropriation of state funds than do statutes fixing the budget limitations of cities, counties, or other taxing districts, or various other statutes which could be cited. Clearly, it adds a second subject to the bill."
The Kansas Performance Review Board's provisos are placed within sections of appropriations bills that do appropriate State funds, establish expenditure limitations on those funds and authorize the transfer of State moneys from one fund to another. The provisos
themselves authorize State agencies to make expenditures from any of their special revenue funds to pay for certain performance reviews, and that such payments, when made, are to be deposited into the Kansas performance review board fund. These provisions are clearly appropriately placed in an appropriations bill. While less clear, because the provision authorizing the Board to "fix, charge and collect amounts from state agencies to recover all or part of the costs of analyses of governmental functions" is not entirely foreign to appropriations of State funds, we believe it is appropriately placed in an appropriations bill as well.
Thus, in our opinion, the Board has been authorized since May 20, 1998[13] to "fix, charge and collect amounts from state agencies to recover all or part of the costs of analyses of governmental functions conducted at the request of such state agencies in accordance with K.S.A. 75-7140 (sic),"[14] and state agencies subject to such analysis by the Board have been authorized to pay for such "from one or more appropriate special revenue funds" of the agency.[15] Subsequent to April 26, 1999,[16] the Board has been authorized to "fix, charge and collect amounts from state agencies to recover all or part of the costs of analyses of governmental functions conducted at the discretion of the executive director . . . in accordance with K.S.A. 75-7104"[17] in addition to charging for those conducted at the request of the agency. There apparently is no authority to require payment for analyses conducted prior to these dates or outside the limitations established by the provisos, and likewise there appears to be no authority for agencies to pay for the costs of an analysis from any funds other than "one or more appropriate special revenue funds."[18] Thus, agencies' ability to pay such costs may depend on availability of appropriate funds and any other budget law constraints.[19]
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Julene L. Miller Deputy Attorney General
CJS:JLM:jm
[1] K.S.A. 75-7102.
[2] K.S.A. 75-7101.
[3] K.S.A. 75-7103.
[4] K.S.A. 75-7104(a)(1).
[5] K.S.A. 75-7104(a)(2).
[6] K.S.A. 75-7104(a)(3).
[7] K.S.A. 75-7104(a)(4).
[8] Legislative Coordinating Council v. Stanley, 264 Kan. 690, 706
(1998), quoting Pork Motel, Corp. v. Kansas Dept. of Health Environment, 234 Kan. 374, 378 (1983).
[9] Id. See also Sage v. Williams, 23 Kan. App. 2d 624, 627-28
(1997).
[10] L. 1998, Ch. 202, § 42(e); L. 1999, Ch. 132, § 42(b); L. 2000, Ch. 130, § 20(b).
[11] L. 2000, Ch. 130, § 20(b). Note, the proviso for 1998 allowed for charging only State agencies that had requested such an analysis; there was no authority to charge for analyses conducted at the Director's discretion.
[12] 230 Kan. 252 (1981).
[13] L. 1998, Ch. 202, § 65.
[14] Id. at § 42(e).
[15] Id.
[16] L. 1999, Ch. 132, § 180.
[17] L. 1999, Ch. 132, § 42(b); L. 2000, Ch. 130, § 20(b).
[18] L. 1998, Ch. 202, § 42(e); L. 1999, Ch. 132, § 42(b); L. 2000, Ch. 130, § 20(b).
[19] See, e.g., K.S.A. 75-3730; 75-3731 (and annotations thereto); 75-3732; 46-923.