27 Kan. App.2d 331 (2000)
3 P.3d 590
In the Interest of T.D., d/o/b: 08/14/82.
No. 83,725.
Court of Appeals of Kansas.
Opinion filed April 7, 2000.
Matthew W. Boddington, of Social and Rehabilitation Services, of Topeka, for appellant.
Lynda Koenemann, legal intern, and Lynette Petty, supervising attorney, of Washburn Law Clinic, of Topeka, as guardian ad litem, for appellee.
Melissa Ness, general counsel, and Susan G. Stanley, of Kansas Children's Service League, as amicus curiae.
*332 Before BRAZIL, C.J., MARQUARDT, J., and EDWARD E. BOUKER, District Judge, assigned.
BRAZIL, C.J.:
T.D. was adjudicated a child in need of care and placed in the custody of the Secretary of Social and Rehabilitation Services (SRS). SRS appeals from the order of the trial court requiring SRS to provide counseling services for T.D. with a specific counselor who does not accept Medicaid or have a contract with SRS.
We affirm.
T.D. was adjudicated a child in need of care because of her failure to attend school and her repeated acts of running away from her mother's home and other placement centers. In May 1998, T.D. sought and received counseling services for several months from Bill Moore, a therapist with The Menninger Clinic (Menninger).
After a June 1999 dispositional hearing, the district court ruled T.D. was to remain in the custody of SRS and participate in individual and family therapy with Moore. SRS filed a motion for reconsideration alleging the trial court improperly ordered counseling with Moore since SRS did not have a contract for services with Menninger and Menninger did not accept Medicaid. After a hearing on the motion, the district court reaffirmed its prior decision, stating: "Mr. Moore is required to begin therapy with [T.D.], and SRS is directed to provide those services. However, if Mr. Moore later determines that another counselor may effectively deliver the services, the services may be changed to another counselor." At the hearing the district court explained its decision as follows:
"I am trying to do what I truly believe is in the best interest of this child and I truly believe that Mr. Moore can perhaps effectuate a therapeutic relationship, and he may be able to facilitate someone else coming into that role. May or may not be the case. But at this point and time my determination is that the best interest of the child would be to serve the therapeutic process through Mr. Moore, the previous therapist, which [T.D.] had developed a relationship."
SRS timely appealed the trial court's ruling.
The guardian ad litem for T.D. has filed a motion in this appeal notifying this court that in December 1999, the district court dismissed *333 the underlying case since "it was no longer appropriate to exercise jurisdiction given the progress of [T.D.] and her mother in complying with the case plan, including participation in family counseling with Bill Moore and [T.D.'s] completion of a drug treatment program, consistent attendance at school, and following the rules of the home."
Although the issue raised on appeal was rendered moot by the dismissal of the underlying case, both SRS and the guardian ad litem urge this court to consider the merits of the case since the issue raised is capable of repetition and of public importance.
Once the underlying case was dismissed, the obligation of SRS to provide payment for services rendered by Moore ceased. Thus, any judgment issued on appeal would be ineffectual. Pursuant to the general rule, this court does not decide moot questions or render advisory opinions. The court in State ex rel. Stephan v. Johnson, 248 Kan. 286, Syl. ¶ 3, 807 P.2d 664 (1991), held as follows: "The court is statutorily and constitutionally without authority to render advisory opinions in cases found to be moot. A case is moot when no further controversy exists between the parties and where any judgment of the court would be without effect."
There is an exception to the general rule where the case involves a question of public interest. Appellate courts are inclined to retain an appeal on this basis if the question involves one that is likely to arise frequently in the future unless it is settled by a court of last resort. Junction City Education Ass'n v. U.S.D. No. 475, 264 Kan. 212, 215, 955 P.2d 1266 (1998); Board of Johnson County Comm'rs v. Duffy, 259 Kan. 500, 504, 912 P.2d 716 (1996).
"`The phrase "public interest" as used in this connection means something more than that the individual members of the public are interested in the decision of the appeal from motives of curiosity or because it may bear upon their individual rights or serve as a guide for their future conduct as individuals.'" Stephan, 248 Kan. at 290.
In Duffy, the court addressed the question of whether the Board of Tax Appeals possessed the statutory authority to order a statewide reappraisal of agricultural land in Kansas. Since the values for real estate throughout the state were already issued for the year in dispute, any decision rendered on appeal would have been ineffectual. *334 However, the parties urged the court to address the merits of the case since an issue of statewide importance was raised which might arise again even though it had evaded review. The court elected to retain the appeal and address the merits because the issue raised concerned the statewide reappraisal of agricultural land and the statutory powers conferred upon certain government agencies which were capable of repetition and of statewide interest and public importance.
Like Duffy, the issue in this case is capable of repetition and involves statutory interpretation to ascertain whether the courts have the power to decide if a child in SRS custody is to receive treatment from a specific counselor. Although the guardian ad litem does not represent an interested class, SRS is an interested party in child in need of care cases statewide and provides for the welfare of the children in its custody. See In re C.H.W., 26 Kan. App.2d 413, 417, 988 P.2d 276 (1999). The issue raised concerns the welfare of children in SRS custody, and the welfare of children is a matter of public policy of great state concern. Werner v. Kliewer, 238 Kan. 289, 296, 710 P.2d 1250 (1985).
We will consider the merits of the case.
SRS argues the trial court exceeded its statutory authority in ordering SRS to pay for T.D.'s counseling with Moore. It contends K.S.A. 38-1512 provides SRS with the authority to determine which counselors are to provide those types of court-ordered services. SRS does not contend the trial court abused its discretion.
The guardian ad litem argues the order of the trial court was proper. She argues K.S.A. 1999 Supp. 38-1563(c) provides the trial court with power to attach any terms and conditions to its order for counseling, including the condition that the child seek treatment from a specific counselor.
The issue raised requires the interpretation of statutes. Statutory interpretation is a question of law and appellate review is unlimited. Hamilton v. State Farm Fire & Cas. Co., 263 Kan. 875, 879, 953 P.2d 1027 (1998). K.S.A. 38-1512 of the Kansas Code for Care of Children provides:
"(a) How paid. (1) If a child alleged or adjudged to be a child in need of care is not eligible for assistance under K.S.A. 39-709 and amendments thereto, expenses *335 for the care and custody of the child shall be paid out of the general fund of the county in which the proceedings are brought. For the purpose of this section, a child who is a nonresident of the state of Kansas or whose residence is unknown shall have residence in the county where the proceedings are instituted.
"(2) When a law enforcement officer has taken a child into custody as authorized by subsection (b) of K.S.A. 38-1527 and amendments thereto and delivered the child to a person or facility designated by the secretary or when custody of a child is awarded to the secretary, the expenses of the care and custody of the child may be paid by the secretary out of the state social welfare fund, subject to payment or reimbursement as required in subsection (b), even though the child does not meet the eligibility standards of K.S.A. 39-709 and amendments thereto.
"(3) When the custody of a child is awarded to the secretary, the expenses of the care and custody of the child shall not be paid out of the county general fund."
In its brief, SRS claims "the language of K.S.A. 38-1512 clearly provides if SRS is paying the bill, SRS should make the decision as to with whom it will contract," and, under the statute, "[t]he legislature has expressly provided that if the child is eligible for medical assistance, Medicaid funds are to be used." It also contends this court's decision in In re D.J.K. 21 Kan. App.2d 338, 899 P.2d 509 (1995), is on point and applicable to this case.
In In re D.J.K. the trial court required D.J.K. to attend a day-reporting program for juvenile offenders for violating his probation. Since D.J.K.'s parents could not afford the program, the trial court ordered D.J.K. into SRS custody, placed him with his father, and ordered him to begin the program. On appeal, SRS challenged the trial court's decision to place the child with his father and to require SRS to pay for the program. This court noted that under K.S.A. 1999 Supp. 38-1664(a), once a juvenile offender is in the custody of SRS, a trial court has no power to direct a specific placement by SRS for that juvenile. It held the trial court lacked authority to place D.J.K. with his father. This court also held that the trial court had impliedly ordered SRS to pay for D.J.K. to attend the program and lacked the authority to do so under K.S.A. 38-1616. 21 Kan. App.2d at 339.
In reaching its holding, the court in In re D.J.K. noted that nothing in the record explained what the program was other than it was a "day-reporting program." It noted the Supreme Court's ruling in Shelter Mut. Ins. Co. v. Williams, 248 Kan. 17, 30, 804 P.2d 1374 *336 (1991), indicated SRS was only obligated under K.S.A. 38-1616 to bear the expense of things such as food, shelter, education, and ordinary medical care. Because the program did not fall under one of the categories set forth in Williams, SRS was not liable for the expense of the program.
K.S.A. 38-1616(a)(2) contains essentially the same language as K.S.A. 38-1512(a)(2), but pertains to the obligation of SRS to pay for certain costs for juveniles in its custody. Like the ruling in In re D.J.K. the trial court's ruling in this case implied SRS was to pay for T.D. to attend counseling with Moore. Despite these similarities, In re D.J.K does not support the position of SRS. The order of the trial court in In re D.J.K that required SRS to pay for the juvenile's program was reversed because the program did not fit the description of food, shelter, education, and ordinary medical care. This ruling implies that had the program fit into one of those categories, SRS would have been responsible to pay for the program. This court has previously held that, under K.S.A. 38-1616(a)(2), SRS is responsible for the costs associated with a juvenile's detention. See Board of Harvey County Comm'rs v. Whiteman, 23 Kan. App.2d 634, 637, 933 P.2d 771 (1997); In re J.L., 21 Kan. App.2d 878, 881-83, 908 P.2d 629 (1995), rev. denied 259 Kan. 928 (1996).
SRS does not dispute it was required to pay for the type of counseling ordered by the trial court. It contends, however, it is within its discretion to choose the counselor who was to provide the service.
K.S.A. 1999 Supp. 38-1563 authorizes a court to issue dispositions and states:
"(c) The court may order the child and the parents of any child who has been adjudged a child in need of care to attend counseling sessions as the court directs. The expense of the counseling may be assessed as an expense in the case. No mental health center shall charge a greater fee for court-ordered counseling than the center would have charged to the person receiving counseling if the person had requested counseling on the person's own initiative." (Emphasis added.)
K.S.A. 1999 Supp. 39-708c(b) provides: "The secretary shall have the power and duty to determine the general policies relating *337 to all forms of social welfare which are administered or supervised by the secretary and to adopt the rules and regulations therefor."
The statutes cited by the parties are neither ambiguous nor conflicting. Where the language of statutes is plain and unambiguous and appropriate to obvious purpose, an appellate court should give effect to the intention of the legislature as expressed, rather than determine what the law should be. See Chavez v. Markham, 256 Kan. 859, 865, 889 P.2d 122 (1995). When construing a statute, courts should give words in common usage their natural and ordinary meaning. In re Vanderblomen, 264 Kan. 676, 680, 956 P.2d 1320 (1998).
Pursuant to the plain language of the statutes, a trial court has the authority to order a child found to be a child in need of care to attend counseling sessions as it directs, and the expense is to be assessed as an expense in the case. K.S.A. 1999 Supp. 38-1563(c). There is no language in the statute limiting the trial court's discretion to attach terms and conditions to the counseling services it orders, including a requirement that a child attend counseling with a particular counselor.
If the child is in the custody of SRS, SRS is required to pay the expense. It has the discretion to pay the expense out of the state social welfare fund if the child does not qualify for federal aid. K.S.A. 38-1512(a)(2). The expense cannot be paid out of the county general fund. K.S.A. 38-1512(a)(3). SRS can seek reimbursement for the expense paid out of the social welfare fund from the child's parents or as otherwise provided in K.S.A. 38-1512(a)(2) and (c). The Code for Care of Children does not contemplate that a child in SRS custody must receive treatment from those counselors who have a contract with SRS or accept the medicaid rate. Nor does it contemplate that SRS is only responsible to pay for costs at the medicaid rate. Cf. In re J.L., 21 Kan. App.2d at 883 (rejecting SRS's argument it need not pay full expense of detention since it customarily paid less than total cost for detentions, reasoning K.S.A. 38-1616[a][2] says nothing about partial payment).
K.S.A. 1999 Supp. 39-708c(b) gives SRS the power to determine general policies and adopt rules and regulations. Contrary to the argument asserted by the amicus curiae, the Kansas Children's *338 Service League (KCSL), K.S.A. 39-708c(b) does not conflict with K.S.A. 38-1563(c), which specifically gives the trial court the authority to order a child found to be a child in need of care to attend counseling. Further, the concerns expressed by the KCSL are not persuasive. There is no indication by the parties that the problems identified by the KCSL have occurred in the past. Should a trial court hold SRS in contempt of court for failing to provide the services of a designated therapist because the therapist was ill, on vacation, or had lost his or her license, SRS could seek appellate review for a determination of whether the trial court abused its discretion. Similarly, appellate review may be sought to determine if a trial court has abused its discretion in directing a child in SRS custody to attend counseling with a specific provider.
The trial court did not exceed its statutory authority in ordering T.D. to attend individual and family counseling with Moore, and SRS was responsible for the expense of the service under K.S.A. 38-1512(a)(2).
SRS also argues the trial court's decision violated the separation of powers doctrine since the trial court, in effect, forced SRS to engage in a contract with a third party.
The question of whether one branch of government has usurped the power of another branch has been stated as a constitutional question. In re C.H.W., 26 Kan. App.2d at 421-22. The standard of review for determining questions of law is unlimited. Hamilton v. State Farm Fire & Cas. Co., 263 Kan. at 879. The relevant principles used in determining whether one branch of the government has usurped the power of another branch of the government are set forth in State v. Compton, 233 Kan. 690, 664 P.2d 1370 (1983), as follows:
"A usurpation of powers exists when there is a significant interference by one department with operations of another department.
"In determining whether or not a usurpation of powers exists a court should consider (a) the essential nature of the power being exercised; (b) the degree of control by one department over another; (c) the objective sought to be attained by the legislature; and (d) the practical result of the blending of powers as shown by actual experience over a period of time." 233 Kan. 690, Syl. ¶¶ 8, 9.
"A complete separation is neither desirable nor intended by the Constitution. It has long been recognized that the powers of one branch may overlap with another branch's powers." In re C.H.W., 26 Kan. App.2d at 421.
*339 The trial court had the statutory authority to order T.D. to attend counseling with a specific provider and to require SRS to pay for the counseling as an expense of the case under K.S.A. 38-1512(a)(2). The objective was for SRS to provide for the treatment and care of those children in its custody. Although SRS may not be able to pay for the counseling at the medicaid rate for counseling services received from Menninger, it can pay for the service out of the social welfare fund. The parties indicate the difference between the medicaid rate and that charged by Menninger is insignificant in this case. The trial court's order for SRS to provide for T.D.'s counseling with Moore was not a usurpation of power and SRS's separation of powers claim fails.
Affirmed.