(87 P.3d 360)
No. 90,560

KATRINA HERSHAW, *Appellee*, v. FARM & CITY INSURANCE
COMPANY, *Appellant*.

Opinion filed April 9, 2004.

*Paul Hasty, Jr.*, of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Overland Park, for appellant.

*Gerald W. Scott* and *Mark A. Scott*, of Gerald W. Scott, P.A., of Wichita, for appellee.

Before GREENE, P.J., ELLIOTT, J., and KNUDSON, S.J.

KNUDSON, J.: This appeal follows the district court's grant of summary judgment to Katrina Hershaw (plaintiff), against her automobile insurance company, Farm & City Insurance Company (defendant). The district court concluded that as a matter of law coverage was provided to the plaintiff and her claim was denied without just cause or excuse. The plaintiff was granted a judgment of $1,383.31 for damages to her automobile and an additional $30,000 for attorney fees. On appeal, the defendant contends the district court erred as coverage had lapsed before the underlying automobile accident had occurred. The defendant also contends the district court erred in refusing to join the potential tort claimant as an additional party, dismissing its counterclaim for attorney fees, and granting the plaintiff's claim for attorney fees.

We conclude the district court did not err in refusing to join the potential tort claimant as an additional party or in denying the defendant's request for attorney fees; however, we also conclude

summary judgment was improvidently granted. Thus, we affirm in part, reverse in part, and remand for further proceedings.

*Factual and Procedural Overview*

Both plaintiff and defendant filed motions for summary judgment. The following circumstances are disclosed from pleadings and memoranda filed under Supreme Court Rule 141 (2003 Kan. Ct. R. Annot. 191). In early September 2001, the plaintiff telephoned American Insurance Agency (American Insurance), an independent insurance agency, and spoke with one of its agents, Dick Hadley, concerning quotes on automobile insurance for a 1995 Saturn SL that she was considering buying. The plaintiff claims she told Hadley she had one ticket for driving on the wrong side of the road in May 1999. The plaintiff claimed she only had to give her driving history for the previous 2 or 3 years, based on her previous experiences buying insurance.

On September 10, 2001, the plaintiff purchased the 1995 Saturn SL. Also on September 10, 2001, she met with Hadley. Hadley determined the least expensive insurance would be the defendant's. The plaintiff signed the application for insurance and gave Hadley a check for the premium of $260.

While at American Insurance, the plaintiff received an insurance identification card that showed coverage provided by the defendant with the policy number BIN12305 and an effective date of September 10, 2001, and an expiration date of December 10, 2001. The plaintiff used the insurance identification card given to her by Hadley, as well as a vehicle listing sheet that showed Twin Lakes National Bank (Twin Lakes) as a recognized lienholder on the insurance policy, to obtain a loan from Twin Lakes to buy the Saturn. She also signed an "Agreement to Provide Accidental Physical Damage Insurance," which required her to maintain insurance on the Saturn.

After receiving the application, the defendant issued a written binder of coverage effective at 12:01 a.m. on September 10, 2001, and expiring on October 7, 2001, at 12:01 a.m. The binder number was 582963A. The back side of the binder stated:

"The Company accepting this risk acknowledges itself bound by the terms, conditions and limitations of the policy (or policies) of insurance in current use by the Company in this state for the kind (or kinds) of insurance specifically ordered on the other side of this Binder from the effective date and hour specified therein and the named insured accepts this Binder under such terms, conditions and limitations. Unless previously cancelled, this Binder shall terminate at 12:01 A.M. on the day indicated on reverse side. Acceptance by the named insured of a policy (or policies) as ordered in place hereof shall render this Binder null and void. A premium charge at the rates and in compliance with the rules of the Manual of Rates in use by the Company when this Binder becomes effective will be made for the time this Binder is in effect if no policy of insurance in place hereof is issued and accepted by the named insured."

The binder was sent to American Insurance. The binder contained a statement that the premium quotation would be forwarded after the plaintiff's driving record was verified. After the defendant finished its underwriting procedures, on or about September 28, 2001, it sent a quotation to American Insurance indicating plaintiff owed an additional $22.10 for her premium and stating that this was due before expiration of the binder. American Insurance unilaterally extended coverage afforded through the binder until December 2, 2001, at 12:01 a.m. Quotations sent by the defendant contain the same language on their backs as do the binders. Additionally, the quotation contained a request by the defendant to forward the quotation to the plaintiff. Hadley claims he sent the plaintiff the quotation, but plaintiff denies ever receiving it or any cancellation notice on her policy.

On December 2, 2001, at approximately 2:45 p.m., the plaintiff was involved in an accident while driving the insured automobile. She called American Insurance on December 3, 2001, and claims first learning of the additional premium due. The plaintiff then gave American Insurance a check for the additional premium of $22.10 that was rejected by the defendant. Accordingly, the defendant refused to pay the plaintiff's claim of $1,883.31 for damages to her automobile.

The plaintiff filed suit seeking damages, attorney fees, and indemnification from the defendant for any claim that might be asserted by the potential third-party claimant arising from the automobile accident. After the defendant filed a motion to join the

potential tort claimant as a contingently necessary party, the plaintiff abandoned its claim for indemnification and the district court denied joinder. In its answer, the defendant made a claim for attorney fees, claiming the plaintiff committed a fraudulent insurance act by misrepresenting her driving record to American Insurance. Upon the plaintiff's motion, the district court dismissed the defendant's claim for attorney fees. Both parties filed motions for summary judgment. The district court granted the plaintiff's motion and denied the defendant's motion. In a separate hearing, the court granted the plaintiff attorney fees and expenses of $30,000. The defendant filed a timely notice of appeal.

*Defendant's Claim for Attorney Fees*

The defendant claims the district court erred in dismissing its claim for attorney fees. The defendant's claim is based on K.S.A. 40-2,118(c). The issue of whether a district court has authority to impose attorney fees under a particular statute is a question of law over which appellate review is plenary. *Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan. 875, 879, 953 P.2d 1027 (1998).

K.S.A. 40-2,118 punishes fraudulent acts committed against insurers in obtaining insurance. K.S.A. 40-2,118(c) states: "In addition to any other penalty, a person who violates this statute shall be ordered to make restitution to the insurer . . . for any financial loss sustained as a result of such violation." The defendant contends this is remedial legislation and "any financial loss sustained" should be construed to include recovery of reasonable attorney fees. See *Squires v. City of Salina*, 9 Kan. App. 2d 199, 202, 675 P.2d 926 (1984).

The defendant's argument fails. In order to be entitled to restitution under K.S.A. 40-2,118(c), the defendant must prove the plaintiff committed a fraudulent insurance act. The district court specifically held: "[T]here was no fraud on the part of the plaintiff in the application for insurance." The defendant has not appealed this finding. Therefore, whether K.S.A. 40-2,118(c) allows for attorney fees is a moot issue. As a general rule, an appellate court does not decide moot questions or render advisory opinions. However, an exception is recognized if the question is one likely to arise

frequently in the future unless settled by the appellate court. *In re T.D.*, 27 Kan. App. 2d 331, 333, 3 P.3d 590, *rev. denied* 269 Kan. 933 (2000).

Ordinarily, a statute must specifically allow for "attorney fees" before such fees will be allowed. In *Legislative Coordinating Council v. Stanley*, 264 Kan. 690, 703, 957 P.2d 379 (1998), the court determined that the use of the term "costs" in a statute does not allow for an award of attorney fees absent express statutory authority. The court in *Stanley* specifically found that the use of the term "all costs" in K.S.A. 25-1452 does not include attorney fees. 264 Kan. at 703. Additionally, in *Wolf v. Mutual Benefit Health & Accident Association*, 188 Kan. 694, 700, 366 P.2d 219 (1961), the court stated: "Ordinarily the term 'costs' and 'expenses' as used in a statute are not understood to include attorney fees." Finally, the legislature has had no difficulty in expressly providing for the recovery of attorney fees, including remedial legislation, when recovery is intended. See K.S.A. 8-2416; K.S.A. 16-1207; K.S.A. 16a-2-507; K.S.A. 2003 Supp. 17-1902; K.S.A. 17-5571; K.S.A. 17-6305; K.S.A. 17-6908; K.S.A. 2003 Supp. 17-7670; K.S.A. 2003 Supp. 17-76,133; K.S.A. 2003 Supp. 22-4110; K.S.A. 40-4011; K.S.A. 44-536a; K.S.A. 2003 Supp. 44-566a; K.S.A. 48-241a; K.S.A. 49-416a; K.S.A. 50-505; K.S.A. 55-1210; K.S.A. 56-1a554; K.S.A. 58-3966; K.S.A. 2003 Supp. 58a-1004; K.S.A. 2003 Supp. 59-3086; K.S.A. 2003 Supp. 59-3087; K.S.A. 2003 Supp. 59-3088; K.S.A. 2003 Supp. 59-3089; K.S.A. 2003 Supp. 60-211; K.S.A. 2003 Supp. 60-216; K.S.A. 2003 Supp. 60-226; K.S.A. 2003 Supp. 60-230; K.S.A. 2003 Supp. 60-237; K.S.A. 2003 Supp. 60-256; K.S.A. 2003 Supp. 60-721; K.S.A. 60-905; K.S.A. 2003 Supp. 60-1607; K.S.A. 2003 Supp. 60-4116; K.S.A. 2003 Supp. 61-3102; K.S.A. 65-1526; K.S.A. 65-1954; K.S.A. 65-4968; K.S.A. 74-7039; K.S.A. 74-7312; K.S.A. 2003 Supp. 75-2973; K.S.A. 75-4360; K.S.A. 2003 Supp. 79-15,126; K.S.A. 79-32,193; K.S.A. 84-4a-211; K.S.A. 2003 Supp. 84-9-607. Accordingly, we conclude the district court did not err in rejecting the defendant's claim for attorney fees as recovery is not expressly authorized under K.S.A. 40-2,118(c) and controlling canons of statutory construction do not permit authorization by implication.

### Refusal to Join Third Party

The defendant claims the district court erred by refusing to make the potential tort claimant a party in the lawsuit. A district court's determination of whether a person is a "contingently necessary person" under K.S.A. 60-219 is subject to an abuse of discretion standard of review. *McHorse v. Koontz*, 27 Kan. App. 2d 817, 821, 7 P.3d 1272 (2000).

K.S.A. 60-219 states:

"(a) *Persons to be joined if feasible.* Whenever a 'contingently necessary' person, as hereafter defined, is subject to service of process, he shall be joined as a party in the action. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

"A person is contingently necessary if (1) complete relief cannot be accorded in his absence among those already parties, or (2) he claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action in his absence may (i) as a practical matter substantially impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

"(b) *Determination by court whenever joinder not feasible.* If a contingently necessary person cannot be made a party, the court shall determine whether in equity and good conscience the action ought to proceed among the parties before it or ought to be dismissed. The factors to be considered by the court include: First, to what extent a judgment rendered in the absence of the contingently necessary person might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the absence of the contingently necessary person would be adequate; fourth, whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder."

As already noted, plaintiff abandoned her claim for declaratory relief. Thus, remaining before the district court was plaintiff's breach of contract claim with a request for recovery of damages arising from the automobile collision. Under these circumstances, joinder of the potential tort claimant in a breach of contract action brought by the insured against her insurance company would not

be appropriate and would lead to an additional level of legal complexity, probable delay, and increased litigation costs for the insured. If the insured wishes to seek a determination whether there is coverage extended to pay claims of a tort claimant, it may pursue an action for declaratory relief under K.S.A. 60-1701 *et seq*.

Misplaced is the defendant's reliance on *Heinson v. Porter*, 244 Kan. 667, 772 P.2d 778 (1989), *overruled on other grounds Glenn v. Fleming*, 247 Kan. 296, 799 P.2d 79 (1990). In *Heinson*, the Supreme Court held a determination of liability coverage in a declaratory judgment action brought by an insurance company against its insured was not binding on the plaintiff who was not joined as a party in that action. 244 Kan. 667, Syl. ¶ 1.

In the case now on appeal, the plaintiff abandoned any request for a determination of liability coverage with her remaining claim being based upon the defendant's breach of contract. Under these circumstances, we agree with the district court that a third-party tort claimant is not a contingently necessary person in a breach of contract case brought by an insured against its insurer.

*Grant of Summary Judgment*

" 'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citation omitted.]' " *Mitchell v. City of Wichita*, 270 Kan. 56, 59, 12 P.3d 402 (2000) (quoting *Bergstrom v. Noah*, 266 Kan. 847, 871-72, 974 P.2d 531 [1999]).

In denying the defendant's motion for summary judgment, the district court found:

"1. Farm & City had a legal obligation to communicate the request for additional premium directly to the plaintiff, Miss Hershaw.

"2. When the company sent the communication about additional premiums being due to the agent and instructed him to send it on to the plaintiff, Farm & City was expecting him to act as the defendant's agent."

In granting the plaintiff's motion for summary judgment, the court found:

"5. The back of the binder No. 582963A incorporates the provisions of written policies of insurance in current use by the Company in Kansas for the kind of insurance specifically ordered on the other side of the Binder, and these policies render it necessary for the defendant to have communicated notice directly to the plaintiff, Miss Hershaw, giving her notice of the additional premium due and the deadline for the amount of the increased premium requested.

"6. This was not done and plaintiff was unaware of the request for additional premium.

. . . .

"8. Regarding the issue of estoppel, the agent's issuance of the ID card and the declaration or the listing and certainly the bank's reliance and the State of Kansas Motor Vehicle Registration reliance upon those documents does not by themselves create the contract. However, when one takes into account Mr. Hadley's issuance of those documents, especially the ID card and the application for insurance and the actions of the company by purportedly extending the period of coverage to December 2, 2001, the Court finds that these are significant elements of estoppel, and the Court finds that as a matter of law the company was estopped to claim coverage ended at 12:01 a.m. on December 2, 2001.

"9. Further, the Court finds that the coverage began at 4:55 p.m. on September 10, 2001, and that is the time of day which is the ending time on each day of coverage.

"10. The Court finds that it would have been improper for the company to unilaterally make any termination of coverage earlier than 4:54 p.m. on the last day of coverage."

Although the district court did not explicitly incorporate its findings entered in denying the defendant's motion, it is apparent those findings were implied in granting the plaintiff's motion.

The defendant does not dispute that upon issuance of the binder a temporary contract of insurance was entered into between the parties but contends there exist material issues of fact that preclude the entry of summary judgment. Specifically, the defendant contends sufficiently controverted is whether the plaintiff was given notice of a rated-up counteroffer with extension of coverage under the binder until 12:01 a.m. on December 2, 2001, at which time

coverage would end unless the additional $22.10 premium charge had been paid.

The defendant suggests the district court confused cancellation of an insurance policy with lapse of an insurance policy. The defendant argues because the binder lapsed by its own terms, Kansas law does not require notice as would be required if a policy of insurance was cancelled. We do not agree with the defendant's reasoning. Here, we are not addressing coverage under the 90-day insurance policy; we are addressing the nature and extent of coverage afforded under the binder issued by the defendant.

In *Service v. Pyramid Life Ins. Co.*, 201 Kan. 196, Syl. ¶ 6, 440 P.2d 944 (1968), our Supreme Court stated: "A binding receipt issued by a life insurance company connotes obligation, and when supported by valid consideration, suggests a contract." The *Service* court explained:

"Under authorities which hold temporary insurance to be in effect, the conditions imposed by the receipt herein would be treated as conditions subsequent. The company was bound to act either affirmatively or negatively on the application. The insured, if an acceptable risk, was entitled to a policy. If he was not acceptable, the insurance company was required to so notify him, and return the premium paid, or if rated up, notify him by tendering an application at the higher rate." 201 Kan. at 215.

Although *Service* concerned life insurance, not car insurance, we find persuasive the requirement that temporary insurance is not terminated without rejection of the application and notice to the insured.

In *Statewide Ins. Corp. v. Dewar*, 143 Ariz. 553, 559, 694 P.2d 1167 (1984), the court recognized that "[i]t is also generally recognized that the notice of rejection or refusal [of the insurance application], with its implicit termination of the binder, is effective only when received by the insured. [Citations omitted.]" The court noted that if an expectant insured did not receive notice the application was rejected, the individual would not know he or she is driving without insurance. The reason for requiring notice to terminate a binder is based upon sound public policy. 143 Ariz. at 559.

In addressing whether there is a notice requirement, we also consider the terms of the binder issued by the defendant:

"The Company accepting this risk acknowledges itself bound by the terms, conditions and limitations of the policy (or policies) of insurance in current use by the Company in this state for the kind (or kinds) of insurance specifically ordered on the other side of this Binder from the effective date and hour specified therein and the named insured accepts this Binder under such terms, conditions and limitations."

Whether the binder incorporated the notice requirements of the underlying standard policy of insurance issued by this defendant has been considered by another panel of this court in *Sutton v. Farm and City Ins. Co.*, Nos. 90,160 and 90,408, unpublished opinion filed November 7, 2003, *rev. denied* 277 Kan. 928 (2004). The *Sutton* panel noted:

"There is case law support for [the insured's] argument that a binder incorporates the provisions of the insurance policy. For example, in *State Auto Mut. Ins. Co. v. Babcock*, 54 Mich. App. 194, 220 N.W.2d 717 (1974), the insured filled out an application for insurance coverage, paid a 30-day premium, and was issued a receipt for a premium. The court held that this created a temporary contract of insurance. 54 Mich. App. at 204-05. The court also determined that the binder should include provisions of an insurance policy that ordinarily would have been issued by the insurance company. Because the applicable policy stated that all relevant statutory provisions applied to the policy, the court held that the cancellation statute applied to this binder. As a result, the insurance company had to give the insured 10 days notice that his application was being rejected and his binder cancelled in order for him to obtain other insurance coverage. 54 Mich. App. at 205-08. Importantly, the court pointed out that a binder, absent express agreement at the time of issuance, is subject to the terms of the insurance policy that would have been issued or that is ordinarily issued by the insurance company. 54 Mich. App. at 205. See also *Terry v. Mongin Ins. Agency*, 105 Wis. 2d 575, 581, 314 N.W.2d 349 (1982) ('A binder, even in the absence of express language, is construed as incorporating the terms and conditions of the standard policy used by the insurer or of a particular insurance policy specified by the parties.'); *Willis v. Midland Risk Ins. Co.*, 42 F.3d 607, 612-13 (10th Cir. 1994) (applying Oklahoma law regarding binders)." *Sutton*, slip op. at 11-12.

Although the *Sutton* panel did not explicitly hold the defendant was obligated under the terms of its binder to give notice according to the terms of its underlying insurance policy, its obiter dictum is persuasive, and we hold that the district court did not err in its

determination Farm & City was required to give notice as required by its standard insurance policy.

We next turn to the issue of how notice is given to the insured. The defendant's standard insurance policy provides, in material part:

"**TERMINATION**

"A. Cancellation. This policy may be cancelled during the policy period as follows:

. . . .

2. We may cancel by mailing to the named insured shown in the Declarations at the address shown in this policy:

a. at least 10 days' notice

(1) if cancellation is for nonpayment of premium; or

(2) if notice is mailed during the first 60 days this policy is in effect and this is not a renewal or continuation policy; or

b. at least 20 days' notice in all other cases."

It is uncontroverted the defendant sent the premium quotation with notice of an extension of coverage to Dick Hadley of American Insurance, not directly to the plaintiff. Whether Hadley forwarded the document to the plaintiff on September 30, 2001, is controverted. Also controverted is whether Hadley was an agent of the plaintiff with authority to accept the quotation and notice. Whether an agent of an insurance company was the agent of the insured to receive notice of cancellation of a policy is ordinarily a fact issue to be resolved at trial. See *Shultz v. Insurance Co.*, 112 Kan. 369, Syl. ¶ 1, 210 Pac. 1102 (1922). Consequently, we hold whether Hadley was acting as an agent of the defendant or the plaintiff and whether notice of cancellation was effectively provided to the plaintiff are material issues of fact precluding summary judgment.

*Ending Time for Binder Coverage and Estoppel*

The defendant also claims the district court erred in finding coverage under the insurance policy could only end at 4:55 p.m. instead of 12:01 a.m. on December 2, 2001. For the reasons we have already given, this finding by the district court is material only if the required notice of cancellation was given to the plaintiff. If proper notice was given, there is no principle of contract law pre-

cluding the defendant from unilaterally extending the binder coverage until 12:01 a.m. rather than 4:55 p.m.

Alternatively, the district court held the defendant was estopped to claim coverage ended at 12:01 a.m. on December 2, 2001. Equitable estoppel is not applicable absent a showing of misrepresentation and detrimental reliance by a party. *Mutual Life Ins. Co. v. Bernasek*, 235 Kan. 726, 730, 682 P.2d 667 (1984). If the defendant gave notice of cancellation to the plaintiff as required under the contract of insurance, we fail to discern evidence of misrepresentation or detrimental reliance that would support application of equitable estoppel. There is no credible evidence in the record that Hadley's issuance of the identification card and evidence of insurance was somehow inconsistent with the requirements of Kansas law. Under these circumstances, we conclude the district court erred.

Finally, we note the plaintiff's contentions on appeal that she did receive her refund of the unearned premium and the defendant's cancellation was based on erroneous information regarding her driving record. These issues were not addressed or relied upon by the district court in its grant of summary judgment. Consequently, these are not issues we should address on their merits.

*Conclusion*

We conclude the district court did not err in dismissing the defendant's claim for attorney fees or in denying its motion to join the potential tort claimant as a contingently necessary party. We further conclude summary judgment was improvidently granted to the plaintiff and the cause should be remanded to the district court for further trial proceedings consistent with our opinion. Consequently, the district court's grant of attorney fees to the plaintiff must be set aside.

Affirmed in part, reversed in part, and remanded for further proceedings.